UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| GLENDA JOHNSON, *as Co-Administrator to the Estate of* NATHAN DWAYNE DANIELS, *et al*., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 6:20-CV-134-CHB-HAI |
| v. | ) ) | |
| LAUREL COUNTY, KENTUCKY, *et al*., | ) ) | RECOMMENDED DISPOSITION |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The parties have reached a settlement in this matter, and Plaintiffs, through counsel, have moved the Court to approve its terms and apportionment of damages.[1]  D.E. 77.  District Judge Boom referred the motion to the undersigned.  D.E. 79.  Defendants have responded indicating no objection to the motion.  D.E. 81, 82.  The motion identifies the fee arrangement and intended allocation of the settlement funds.  However, the Court ordered Plaintiffs to file supplemental briefing in order to ensure that the terms of the agreement and fee arrangement are in the best interest of E.G.D.  D.E. 83, 88.  Plaintiffs subsequently filed affidavits of Glenda Johnson (D.E. 87-1), Regina Fultz (D.E. 89), Regan Johnson (E.G.D.'s mother) (D.E. 87-2) and Paul Croley (Plaintiffs' counsel) (D.E 85).  Having carefully reviewed those materials and the settlement

---

[1] Federal Rule of Civil Procedure 17(a)(1) provides that administrators "may sue in their own names without joining the person for whose benefit the action is brought."  Fed. R. Civ. P. 17(a)(1).  Subsection (c) provides that representatives of minors, such as "a general guardian" or "like fiduciary" may sue or defend on behalf of a minor. Fed. R. Civ. P. 17(c)(1).  If there is no "duly appointed representative," then a minor "may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2).  Per the Amended Complaint, Glenda Johnson and Regina Fultz sued as co-administrators to the estate of Nathan Dwayne Daniels.  D.E. 36 at 1.  Johnson also sued as the legal guardian and next friend of E.G.D., Nathan Daniels's minor child.  *Id.*  Johnson and Fultz are the maternal and paternal grandmothers, respectively, of E.G.D.  D.E. 87-1 ¶ 2 ; D.E. 89-1 ¶ 2.

agreement, and for the reasons explained below, the undersigned recommends Plaintiffs' motion to approve the settlement agreement and its apportionment of damages (D.E. 77) be granted.

**I.**

Plaintiffs summarize the factual history of this matter:

On April 13, 2020, Nathan Daniels was stopped by London City Police and arrested for Possession of Drug Paraphernalia and Controlled Substances. He was transported to the old Laurel County Jail in downtown London and booked into the facility. Although Laurel County has just completed construction of the new Laurel County Detention Center, all new arrestees were quarantined at the old facility due to Covid-19.

On April 15, 2020, a Laurel County Detention Center Deputy Jailer observed Mr. Daniels in his cell making preparations for an apparent suicide attempt. Immediately, Daniels was subdued and taken to the Jail infirmary. Later that day, he was placed on suicide watch.

On April 17, 2020, at 12:13 p.m., Mr. Daniels was found dead in his cell by a Laurel County Detention Center Deputy Jailer. The cause of death was determined to be suicide. Mr. Daniels was legally survived by his wife, Reagan Johnson, and one minor child, G.D., age eight (8). At the time of Daniels' death, the minor child was in the physical and legal custody of his maternal grandmother, Glenda Johnson.

On May 6, 2020, Edgar Daniels, father of Nathan Daniels was appointed by the Laurel District Court as Administrator to manage the affairs of the Estate of Nathan Daniels.

On June 12, 2020, Edgar Daniels and Glenda Johnson both retained Hon. Paul Croley and Hon. Bill Meader to investigate and pursue all claims against any and all defendants involved in Mr. Daniels' death. On June 15, 2020, Reagan Johnson, Mr. Daniels' wife, also retained the firm. Written contingency fee agreements were signed by all parties. Pursuant to those agreements, Hon. Paul Croley, Law Firm of Croley & Foley and Hon. Bill Meader are to receive forty percent (40%) of the gross recovery in addition to litigation expenses advanced to pursue the claims and litigation.

D.E. 77-1 at 1-2.

As Plaintiffs' motion indicates, Kentucky's wrongful death statute is instructive on how the settlement proceeds should be distributed.  Ky. Rev. Stat. § 411.130; D.E. 77-1 at 3.  Pursuant

2

to that statute, the net proceeds should be distributed evenly between Regan Johnson, Mr. Daniels's widow, and E.G.D., Mr. Daniels's only natural minor child.[2]  Ky. Rev. Stat. § 411.130(2)(b).

Plaintiffs' motion also states that E.G.D.'s portion of the settlement is subject to state court oversight, on account of the child's minor status, but indicates this Court can approve the settlement pursuant to Ky. Rev. Stat. § 387.280.  D.E. 77-1 at 4.  However, as the undersigned explained in the February 10 Order, that statute was amended in April 2022 and now only applies to persons under disability who have reached the age of eighteen.  D.E. 83 at 2; *see also* Ky. Rev. Stat. § 387.280.  The undersigned also previously explained that, because Plaintiffs are asserting federal-law claims in a federal forum, "the Court is not bound by Ky. Rev. Stat. § 387.280 or any other state law governing the procedures for court approval of settlements in civil suits."  D.E. 83 at 2 (quoting *Hargrove v. Jefferson Cnty. Bd. of Educ.*, No. 3:16-CV-806-DJH-RSE, 2022 WL 188190, at *3 (W.D. Ky. Jan. 20, 2022)).  And, because the settlement involves a minor, "the Court has a duty under Sixth Circuit authority to 'ma[k]e an independent determination that the settlement[s] are in the minors' 'best interest.'"  *Hargrove*, 2022 WL 188190, at *3 (alterations in original) (quoting *Green v. Nevers*, 111 F.3d 1295, 1301–02 (6th Cir. 1997)).

Although *Green* does not specify what factors should be considered, the Sixth Circuit's assessment of settlements in the class-action context has been found to be instructive.  *See Hargrove v. Jefferson Cnty. Bd. of Educ.*, No. 3:16-CV-806-DJH-RSE, at 5 (W.D. Ky, Mar. 31, 2022) ("In the class-action context, for instance, courts routinely assess whether proposed settlements that will resolve the legal claims of absent class members are 'fair, reasonable, and

---

[2] This statute also indicates that "***funeral expenses and the cost of administration*** and costs of recovery including attorney fees, not included in the recovery from the defendant," should be subtracted from the amount recovered prior to disbursement to the kindred of the deceased.  Ky. Rev. Stat. § 411.130(2) (emphasis added).  Because the parties did not address any funeral expenses or costs of administration, the Court assumes they do not apply here.  However, if this is not the case, a clarifying filing should be made immediately to aid District Judge Boom's consideration of this recommendation.

adequate.'") (citing *Does 1–2 v. Dèjà Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019)) Those factors include:

> (1) the "risk of fraud or collusion"; (2) the "complexity, expense and likely duration of the litigation"; (3) the "amount of discovery engaged in by the parties"; (4) the "likelihood of success on the merits"; (5) the "opinions of class counsel and class representatives"; (6) the "reaction of absent class members"; and (7) the "public interest."

*Id.* (quoting *Does 1–2*, 925 F.3d at 894-95).

Applying the above factors, the undersigned finds the settlement agreement is in the minor E.G.D.'s "best interest." *Green*, 111 F.3d at 1301. First, there is no evidence that the agreement was the product of fraud or collusion. *See Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008) ("In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel."). Accordingly, the Court may presume that neither fraud nor collusion have occurred between counsel in this matter and that Glenda Johnson and Regina Fultz have acted in the best interest of their grandson E.G.D.. *See Hargrove*, 3:16-CV-806-DJH-RSE, at 6 (holding that the court may "safely assume" the representative plaintiffs acted in the best interests of their respective children and grandchildren).

Second, Mr. Croley's affidavit indicates that he and co-counsel thoroughly investigated the claims in this matter, consulted and retained experts, and researched publications, policies, and procedures related to the prevention of custodial suicide. D.E. 85 at 4. Mr. Croley estimates that he and co-counsel have devoted "hundreds of hours" to this case "from the initial investigation to settlement." *Id.* at 6. Mr. Croley also estimates that "the written and electronic discovery in the case totaled over 5,000 pages and more than 48 hours of detention center footage." *Id.* at 3. Of course, continued litigation would result in increased expenses for both parties and lengthen the case's duration. *Hargrove*, No. 3:16-CV-806-DJH-RSE, at 6-7 (citing *Burnham v. Papa John's*

*Paducah, LLC,* No. 5:18-cv-112, 2020 WL 2065793, at *2 (W.D. Ky. Apr. 29, 2020)).  This
information is also relevant to the third factor and reflects the substantial amount of discovery
engaged in by the parties.  The amount of discovery is further reflected in the record, which
includes multiple notices of depositions and other written discovery. *See, e.g.*, D.E. 14; D.E. 20;
D.E. 52; D.E. 65.  Thus, the amount of discovery engaged in by the parties weighs in favor of
approval of the settlement.  *See Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL
1214501, at *10 (E.D. Ky. Mar. 30, 2021) (approving class action settlement based, in part, on the
"considerable amount of discovery" the parties had engaged in).

Fourth, though Plaintiffs "remain convinced that their case has merit," they still "recognize
the substantial risk that comes along with continued litigation."  D.E. 85 at 5.  At this juncture, the
likelihood of Plaintiffs' success is "uncertain," which "further suggest[s] that this settlement is fair
and appropriate." *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 967 (E.D. Mich. 2021).
Indeed, Mr. Croley and his co-counsel believe the settlement "represents an excellent result" based
on their review of the evidence and consideration of the risks of continued litigation.  D.E. 85 at
5.

Fifth, Plaintiffs and Regan Johnson, E.G.D.'s mother, have all indicated that they believe
the settlement amount is a "fair and reasonable sum to resolve the matter."  D.E. 87-1 at 3; D.E.
87-2 at 4; D.E. 89-1 at 4.  To the extent E.G.D.'s portion of the settlement funds will be subject to
state court oversight until his emancipation, Glenda Johnson, E.G.D.'s legal guardian, has
indicated her agreement "to abide by an and all terms the court should place on [her], including
depositing the funds in a lock-down interest bearing federally insured account."  D.E. 87-1 at 3.
Thus, the opinions of Plaintiffs and E.G.D.'s mother also weigh in favor of approving the

settlement. *See Does 1–2*, 925 F.3d at 894 (listing the "opinions of . . . class representatives" as a factor for consideration).

Sixth, there is no evidence that E.G.D., the "rough equivalent" of an "absent party" in this case, opposed the settlement agreement. *Hargrove*, No. 3:16-CV-806-DJH-RSE, at 7; *see also Ditsworth v. P & Z Carolina Pizza*, Civil Action No. 1:20-CV-00084-GNJ, 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021) ("The Court considers the fact that not one class member objected to the settlement agreement to be most persuasive.").

Finally, the settlement agreement "promotes the 'strong public interest in encouraging settlement' because it 'reflects a reasonable compromise over issues actually disputed.'" *Love v. Gannett Co.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *3 (W.D. Ky. Sept. 24, 2021) (quoting *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016)).

Thus, the undersigned finds the relevant factors support a finding that the settlement agreement is in the best interest of E.G.D.

## II.

Additionally, the Court must "determine whether the attorney's fees are reasonable." *Wood v. Van Over*, No. 3:18-CV-380-TRM-DCP, 2019 WL 7882568, at *3 (E.D. Tenn. Nov. 26, 2019); *see also Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988) ("Independent investigation by the court as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest is required.") (citing *Dixon v. United States*, 197 F. Supp. 798, 802 (W.D.S.C. 1961)). In doing so, the Court "must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Dean*, 860 F.2d at 673. "District courts have the discretion to

select the particular method of calculation, but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (internal quotations omitted) (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). The relevant factors include:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352 (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

Pursuant to the written contingency fee agreements in this matter, counsel for Plaintiffs Mr. Croley and Bill Meader "are to receive forty percent (40%) of the gross recovery in addition to litigation expenses advanced to pursue the claims and litigation." D.E. 77-1 at 2. During the course of litigation, Mr. Croley and Mr. Meader "paid litigation expenses and costs totaling $21,643.89, all necessary for a successful prosecution of the claims." *Id.* at 4. These expenses "consisted of filing fees, service fees, expert witness fees, investigation fees, deposition fees and copy fees." *Id.*

"The starting point for determining a reasonable fee is often the lodestar, which is the product of the number of hours billed by counsel and a reasonable hourly rate." *Hargrove*, No. 3:16-CV-806-DJH-RSE, at 9 (internal quotations omitted) (citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007); *Burnham*, 2020 WL 2065793, at *5). Although Mr. Croley has indicated he and his co-counsel have devoted "hundreds" of hours to this case, the Court is unable to calculate the lodestar here without the required billing information. D.E. 85 at 6. Rather than requiring detailed billing information, the Court finds that the fees Plaintiffs' counsel will receive are reasonable under the alternative percentage-of-the-fund method. "The percentage-of-the-fund

method requires a court to calculate the ratio between the fees that the attorneys in a case will receive as part of a settlement and the total benefit to be awarded to the plaintiffs." *Hargrove*, No. 3:26-CV-806-DJH-RSE, at 10 (citing *Gascho*, 822 F.3d at 281). In this case, the contingency fee is 40%, which has been found to be appropriate in § 1983 jail-death litigation. *Lawrence v. Madison Cnty.*, No. 5:13-CV-383-GFVT-REW, 2018 WL 3559195, at *3 n.4 (E.D. Ky. May 16, 2018), *report and recommendation adopted*, No. 5:13-CV-383-GFVT-REW, 2018 WL 3557256 (E.D. Ky. July 24, 2018) (quoting *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (finding "no reason in the record in the record or briefs to disturb" the lower court's finding that the 40% contingency fee was reasonable in a § 1983 case)); *see also Hargrove*, No. 3:26-CV-806-DJH-RSE, at 10 (finding that, while 20-30% fee arrangements are more common, a 40% fee is "hardly the 'windfall' that courts should be wary of when assessing the reasonableness of such fees") (quoting *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021)). Thus, the fee arrangement in this matter is "not so excessive" to bar the Court from finding the settlement agreement is in E.G.D.'s best interest. *Hargrove*, No. 3:26-CV-806-DJH-RSE, at 10 (citing *Green*, 111 F.3d at 1301).

Several of the other relevant factors, as listed above, support the finding that the fee arrangement and the litigation expenses in this matter are reasonable. *See Moulton*, 581 F.3d at 352 (listing factors) (quoting *Bowling*, 102 F.3d at 780). As previously discussed, the value of the benefit rendered to Plaintiffs is substantial, given "the potential risks and uncertain recovery" if litigation proceeds. *Athan*, 523 F. Supp. 3d at 968. Plaintiffs' counsel should be rewarded for undertaking significant risk by litigating this case on a contingency-fee basis. *Hargrove*, 3:16-CV-806-DJH-RSE, at 11 (quoting *Love*, 2021 WL 4352800, at *6).

Further, "'society[]' certainly has a 'stake in rewarding attorneys' who take on challenging civil-rights cases like this one on behalf of minors and their parents." *Id.* (citing *Gascho*, 822 F.3d at 280). Reducing attorney fees based solely on the rate could cause difficulties for future plaintiffs to retain competent counsel. *Id.* (finding this deterrence risk weighs in favor of approving the requested fees) (citing *Rembert*, 986 F.3d at 617; *Love*, 2021 WL 4352800, at *6). Indeed, Mr. Croley's affidavit indicates, "None of the Plaintiffs had the ability to pay the initial retainer, an hourly rate or litigation expenses to pursue the case." D.E. 85 at 5-6. The affidavits of Glenda Johnson, Regina Fultz, and Regan Johnson indicate that they each reviewed the fee arrangement and litigation expenses and believe they are "reasonable and necessary for a successful prosecution of the claims." D.E. 87-1 at 3; D.E. 87-2 at 3; D.E. 89-1 at 4.

And the "professional skill" exhibited by counsel "on both sides" throughout this litigation, supports finding the fee arrangement is reasonable. *See Love*, 2021 WL 4352800, at *6 (noting that counsel's unrebutted "skill, experience, and dedication" weighed in favor of approving the requested attorney fees as reasonable). Nothing in the record suggests that any attorney in this matter acted without professional skill. Rather, the record reflects diligent work by all counsel to litigate and settle this matter.

Having reviewed the settlement agreement in light of the factors discussed above, the undersigned concludes that the settlement agreement is fair and reasonable and in the minor E.G.D.'s best interest. *See Does 1-2*, 925 F.3d at 894; *Green*, 111 F.3d at 1301.

## III.

Based upon the foregoing, the undersigned **RECOMMENDS** that Plaintiffs' motion for approval of the settlement and apportionment of settlement proceeds (D.E. 77) be **GRANTED**.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Any objection must be filed within **fourteen days** of the entry of this recommendation. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of that fourteen-day period, this matter will be submitted to Judge Boom for her consideration.

This the 7th day of April, 2023.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge