UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| GLENDA JOHNSON, *as Co-Administrator to the Estate of* NATHAN DWAYNE DANIELS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LAUREL COUNTY, KENTUCKY, *et al.*, <br><br> Defendants. | Civil Action No. 6:20-CV-134-CHB-HAI <br><br> **ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION AND APPROVING WRONGFUL DEATH SETTLEMENT** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Recommended Disposition ("Recommendation") filed by Magistrate Judge Hanley A. Ingram. [R. 91]. The Recommendation addresses Plaintiffs' Sealed Motion for Approval of Wrongful Death Settlement and Apportionment of Settlement Proceeds. [R. 77]. For the reasons that follow, the Court will adopt Magistrate Judge Ingram's Recommendation and approve the parties' wrongful death settlement and the proposed apportionment of the settlement proceeds.

**I.  Background**

Nathan Daniels died by suicide at the Laurel County Detention Center in London, Kentucky on April 17, 2020. [R. 77-1, p. 2]; *see also* [R. 92-1, p. 2].[1] Daniels was arrested four

---

[1] Prior to issuing his Recommended Disposition, Magistrate Judge Ingram addressed Plaintiffs' Motions to Seal at R. 76, R. 84, and R. 86. *See* [R. 90, p. 1]. The docket entries Plaintiffs sought to seal were Plaintiffs' motion to approve the parties' settlement agreement [R. 77], a copy of the settlement agreement [R. 85-1], Plaintiffs' supplemental brief [R. 87], and the affidavits of Paul Croley [R. 85], Glenda Johnson [R. 87-1], and Regan Johnson [R. 87-2]. Finding no basis upon which to seal the documents, and because of the strong public interest in obtaining court records, Magistrate Judge Ingram denied the motions at R. 84 and R. 86 and directed Plaintiffs to either file documents suitable for the public record or a memorandum in support of sealing them. Plaintiffs subsequently tendered redacted versions of their sealed motion [R. 92] and the sealed affidavits [R. 93-1]; [R. 94-1]; [R. 94-2]. Where applicable, the Court therefore references both the sealed and unsealed docket entries in the record.

1

days prior for Possession of Drug Paraphernalia and Controlled Substances. [R. 77-1, p. 1]; [R. 92-1, p. 1]. On April 15, 2020, a Laurel County Detention Center Deputy Jailer observed Daniels in his cell preparing for an apparent suicide attempt. [R. 77-1, p. 2]; [R. 92-1, p. 2]. Daniels was immediately subdued and taken to the jail's infirmary and was later placed on suicide watch. [R. 77-1, p. 2]; [R. 92-1, p. 2]. Nevertheless, Daniels was found dead in his cell two days later. [R. 77-1, p. 2]; [R. 92-1, p. 2].

Daniels is survived by his wife, Reagan Johnson, and one minor child, E.G.D., age eight (8). [R. 77-1, p. 2]; [R. 92-1, p. 2]. At the time of Daniels' death, the minor child was in the physical and legal custody of his maternal grandmother, Glenda Johnson. [R. 77-1, p. 2]; [R. 92-1, p. 2]. On May 6, 2020, Daniels's father, Edgar Daniels, was appointed by the Laurel District Court as Administrator of the Estate of Nathan Daniels. [R. 77-1, p. 2]; [R. 92-1, p. 2]. On June 12, 2020, Edgar Daniels and Glenda Johnson retained attorneys Paul Croley and Bill Meader to investigate and pursue the instant claims against Defendants. [R. 77-1, p. 2]; [R. 92-1, p. 2]. Reagan Johnson later retained the same attorneys. [R. 77-1, p. 2]; [R. 92-1, p. 2]. Written contingency fee agreements were signed by all parties. [R. 77-1, p. 2]; [R. 92-1, p. 2]. Pursuant to those agreements, attorney Paul Croley, the Law Firm of Croley & Foley, and attorney Bill Meader are to receive forty percent (40%) of the gross recovery in addition to litigation expenses advanced to pursue the claims and litigation. [R. 77-1, p. 2]; [R. 92-1, p. 2].

After a lengthy discovery period, the parties informed the Court that they had reached a settlement in this matter and moved for approval of its terms and apportionment of damages. [R. 77]. The Court referred the motion to Magistrate Judge Hanly A. Ingram for findings of fact, conclusions of law, and a recommendation. [R. 79]. Before ruling, Magistrate Judge Ingram ordered Plaintiffs to file supplemental briefing "to ensure that the terms of the agreement and fee

arrangement are in the best interest of E.G.D." [R. 83]; [R. 88]. Plaintiffs subsequently filed affidavits of Glenda Johnson [R. 87-1], Regina Fultz [R. 89], Regan Johnson [R. 87-2], and Paul Croley [R. 85]. Considering these affidavits and the parties' settlement agreement, Magistrate Judge Ingram recommended that this Court approve the settlement and its apportionment of damages. [R. 91, pp. 1–2].

## II. Analysis

Kentucky's wrongful death statute dictates how the settlement proceeds should be distributed in this matter. Ky. Rev. Stat. § 411.130. Pursuant to that statute, the net proceeds should be distributed evenly between Regan Johnson, Daniels's widow, and E.G.D., Daniels's only minor child. Ky. Rev. Stat. § 411.130(2)(b). Even so, where the settlement involves a minor, "the Court has a duty under Sixth Circuit authority to 'ma[k]e an independent determination that the settlement[s] are in the minors' 'best interest.'" *Hargrove v. Jefferson Cnty. Bd. of Educ.*, No. 3:16-CV-806-DJH-RSE, 2022 WL 188190, at *3 (W.D. Ky. Jan. 20, 2022)) (alterations in original) (quoting *Green v. Nevers*, 111 F.3d 1295, 1301–02 (6th Cir. 1997)). Although *Green* does not specify what factors should be considered, other courts have considered the Sixth Circuit's class action fairness factors in this context. *See id.* at *5 ("In the class-action context, for instance, courts routinely assess whether proposed settlements that will resolve the legal claims of absent class members are 'fair, reasonable, and adequate.'") (citing *Does 1–2 v. Dèjà Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019)). Those factors include:

> (1) the "risk of fraud or collusion"; (2) the "complexity, expense and likely duration of the litigation"; (3) the "amount of discovery engaged in by the parties"; (4) the "likelihood of success on the merits"; (5) the "opinions of class counsel and class representatives"; (6) the "reaction of absent class members"; and (7) the "public interest."

*Id.* (quoting *Does 1–2*, 925 F.3d at 894-95).

Applying these standards, Magistrate Judge Ingram found the parties' settlement agreement is in the minor E.G.D.'s best interest. [R. 91, p. 4] (citing *Green*, 111 F.3d at 1301). First, Magistrate Judge Ingram found no evidence that the agreement was the product of fraud or collusion. *Id.* (citing *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *6 (E.D. Ky. Oct. 23, 2008) ("In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel.")). Magistrate Judge Ingram therefore presumes that neither fraud nor collusion occurred "and that Glenda Johnson and Regina Fultz have acted in the best interest of their grandson E.G.D." *Id.* (citing *Hargrove*, 2022 WL 188190 at *6 (holding that the court may "safely assume" the representative plaintiffs acted in the best interests of their respective children and grandchildren)).

Second, Magistrate Judge Ingram noted that attorney Croley's affidavit "indicates that he and co-counsel thoroughly investigated the claims in this matter, consulted and retained experts, and researched publications, policies, and procedures related to the prevention of custodial suicide." *Id.* (citing [R. 85, p. 4]); *see also* [R. 93-1]. Attorney Croley estimates that he and his co-counsel spent "hundreds of hours" on this case and that "the written and electronic discovery in the case totaled over 5,000 pages and more than 48 hours of detention center footage." [R. 85, pp. 6, 3]; [R. 93-1]. Indeed, as Magistrate Judge Ingram pointed out, the record reflects the substantial discovery exchanged by the parties. [R. 91, p. 5]. Thus, Magistrate Judge Ingram found that the amount of discovery engaged in by the parties weighs in favor of approval of the settlement. *See Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL 1214501, at *10 (E.D. Ky. Mar. 30, 2021) (approving class action settlement based, in part, on the "considerable amount of discovery" the parties had engaged in).

Next, although Plaintiffs "remain convinced that their case has merit," they still "recognize

4

the substantial risk that comes along with continued litigation." [R. 85 at 5]. Magistrate Judge Ingram therefore found that, at present, the likelihood of Plaintiffs' success is "uncertain," which "further suggest[s] that this settlement is fair and appropriate." *Id.* (citing *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 967 (E.D. Mich. 2021)). Fifth, Plaintiffs and Regan Johnson, E.G.D.'s mother, have all indicated that they believe the settlement amount is a "fair and reasonable sum to resolve the matter." *See* [R. 87-1, p. 3]; [R. 87-2, p. 4]; [R. 89-1, p. 4]. Moreover, should E.G.D.'s portion of the settlement funds be subject to state court oversight until his emancipation, Glenda Johnson, E.G.D.'s legal guardian, has indicated her agreement "to abide by any and all terms the court should place on [her], including depositing the funds in a lock-down interest bearing federally insured account." [R. 87-1, p. 3]; *see also* [R. 94-1]. Thus, Magistrate Judge Ingram found that the opinions of Plaintiffs, E.G.D.'s mother, and E.G.D.'s legal guardian also weigh in favor of approving the settlement. [R. 91, pp. 5–6] (citing *Does 1–2*, 925 F.3d at 894 (listing the "opinions of . . . class representatives" as a factor for consideration)).

Sixth, Magistrate Judge Ingram found no evidence that E.G.D., the "rough equivalent" of an "absent party" in this case, opposed the settlement agreement. *Id.* at 6 (citing *Ditsworth v. P & Z Carolina Pizza*, Civil Action No. 1:20-CV-00084-GNJ, 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021) ("The Court considers the fact that not one class member objected to the settlement agreement to be most persuasive.")) (add'l citation omitted). Finally, Magistrate Judge Ingram determined the settlement agreement "promotes the 'strong public interest in encouraging settlement' because it 'reflects a reasonable compromise over issues actually disputed.'" *Love v. Gannett Co.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *3 (W.D. Ky. Sept. 24, 2021) (quoting *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016)).

For all these reasons, Magistrate Judge Ingram found that the settlement agreement is in the best interest of E.G.D. [R. 91, p. 6]. Magistrate Judge Ingram then considered whether the attorney's fees provided for in the parties' written contingency fee agreements are reasonable. *Id.*

The parties' fee agreements in this matter provided that attorneys Croley and Meader "are to receive forty percent (40%) of the gross recovery in addition to litigation expenses advanced to pursue the claims and litigation." [R. 77-1, p. 2]; [R. 92-1, p. 2]. During the course of litigation, Croley and Meader incurred $21,643.89 in expenses and costs consisting of "filing fees, service fees, expert witness fees, investigation fees, deposition fees and copy fees" and which were "all necessary for a successful prosecution of the claims." [R. 77-1, p. 4]; [R. 92-1, p. 4]

While the "starting point for determining a reasonable fee is often the lodestar, which is the product of the number of hours billed by counsel and a reasonable hourly rate," because Plaintiffs' counsel did not provide itemized billing information, Magistrate Judge Ingram could not calculate the lodestar. [R. 91, p. 7] (citing *Hargrove*, 2022 WL 188190 at *9; *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007); *Burnham*, 2020 WL 2065793, at *5). Instead, Magistrate Judge Ingram found that the fees Plaintiffs' counsel will receive "are reasonable under the alternative percentage-of-the-fund method." *Id.* "The percentage-of-the-fund method requires a court to calculate the ratio between the fees that the attorneys in a case will receive as part of a settlement and the total benefit to be awarded to the plaintiffs." *Hargrove*, 2022 WL 188190 at 10 (citing *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 281 (6th Cir. 2016)).

Here, the contingency fee is forty percent, which Magistrate Judge Ingram noted "has been found to be appropriate in § 1983 jail-death litigation." [R. 91, p. 8] (citing *Lawrence v. Madison Cnty.*, No. 5:13-CV-383-GFVT-REW, 2018 WL 3559195, at *3 n.4 (E.D. Ky. May 16, 2018), report and recommendation adopted, No. 5:13-CV-383-GFVT-REW, 2018 WL 3557256 (E.D.

6

Ky. July 24, 2018); *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (finding "no reason in the record in the record or briefs to disturb" the lower court's finding that the forty percent contingency fee was reasonable in a § 1983 case); *Hargrove*, 2022 WL 188190 at *10 (finding that, while 20-30% fee arrangements are more common, a 40% fee is "hardly the 'windfall' that courts should be wary of when assessing the reasonableness of such fees")). Thus, Magistrate Judge Ingram found that the fee arrangement in this matter "is not so excessive to bar the Court from finding the settlement agreement is in E.G.D.'s best interest." *Id.* (internal citations and quotation marks omitted).

Magistrate Judge Ingram further found that the value of the benefit rendered to Plaintiffs is substantial, given "the potential risks and uncertain recovery" if litigation proceeds, and that Plaintiffs' counsel should be rewarded for undertaking significant risk by litigating this case on a contingency-fee basis. *Id.* (citations omitted). Further, Magistrate Judge Ingram noted that "'society[]' certainly has a 'stake in rewarding attorneys' who take on challenging civil-rights cases like this one on behalf of minors and their parents" and that "[r]educing attorney fees based solely on the rate could cause difficulties for future plaintiffs to retain competent counsel." *Id.* at 9. This is evidenced by Croley's affidavit, which indicates, "None of the Plaintiffs had the ability to pay the initial retainer, an hourly rate or litigation expenses to pursue the case." [R. 85, pp. 5–6]; *see also* [R. 93-1]. Moreover, the affidavits of Glenda Johnson, Regina Fultz, and Regan Johnson indicate that they each reviewed the fee arrangement and litigation expenses and believe they are "reasonable and necessary for a successful prosecution of the claims." *See* [R. 87-1, p. 3]; [R. 87-2, p. 3]; [R. 89-1, p. 4]; *see also* [R. 94-1]; [R. 94-2].

Finally, Magistrate Judge Ingram recognized that "the professional skill exhibited by counsel on both sides throughout this litigation, supports finding the fee arrangement is reasonable." [R. 91, p. 9] (citing *Love*, 2021 WL 4352800, at *6 (noting that counsel's unrebutted

7

"skill, experience, and dedication" weighed in favor of approving the requested attorney fees as reasonable)). Indeed, as Magistrate Judge Ingram noted, "the record reflects diligent work by all counsel to litigate and settle this matter." *Id.* Accordingly, Magistrate Judge Ingram concluded that the settlement agreement and the contingency fee agreements are fair and reasonable and in the minor E.G.D.'s best interest. *Id.*

Magistrate Judge Ingram's Recommendation advised the parties that any objections must be filed within fourteen (14) days. *Id.* at 10. The time to file objections has passed, and neither party has filed any objections to the Recommendation nor sought an extension of time to do so.

Generally, this Court must make a de novo determination of those portions of the Recommendation to which objections are made. 28 U.S.C. § 636(b)(1). When no objections are made, this Court is not required to "review . . . a magistrate [judge]'s factual or legal conclusions, under a de novo or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Parties who fail to object to a Magistrate Judge's recommended disposition are also barred from appealing a district court's order adopting that recommended disposition. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

Nevertheless, The Court has reviewed the record, including the settlement agreement and the affidavits of Glenda Johnson, Regina Fultz, Regan Johnson, and Paul Croley, and likewise finds that the settlement agreement and the contingency fee agreements are fair and reasonable and in the minor E.G.D.'s best interest. The Court therefore adopts Magistrate Judge Ingram's Recommended Disposition as the opinion of this Court.

**IT IS THEREFORE ORDERED** as follows:

1. Magistrate Judge Ingram's Recommendation [**R. 91**] is **ADOPTED** as the opinion of this Court.

2. Plaintiffs' Sealed Motion for Approval of Wrongful Death Settlement and Apportionment of Settlement Proceeds [R. 77] is **GRANTED**.

This the 25th day of April, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY